**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

**CARLOS H. VILLALOBOS**

**CIVIL ACTION NO. 26-0309**

**SECTION P**

**VS.**

**JUDGE JERRY EDWARDS, JR.**

**WARDEN WINN CORRECTIONAL**
**CENTER, ET AL.**

**MAG. JUDGE KAYLA D. MCCLUSKY**

## REPORT AND RECOMMENDATION

Petitioner Carlos H. Villalobos,[1] a detainee in the custody of the Department of
Homeland Security and the Bureau of Immigration and Customs Enforcement, petitions for a
writ of habeas corpus under 28 U.S.C. § 2241.[2]   Respondents oppose the petition.  For reasons
below, the Court should deny the petition.

## Background

Petitioner is a citizen of Honduras.  [doc. # 1, p. 3].  He has lived in the United States of
America "since February of 2004."  *Id.*  "Petitioner is a homeowner in West Palm Beach,
Florida, where he lives with his family, including his two U.S. citizen children.  Petitioner owns
and operates a successful car tire company in South Florida, where he employs three people in
addition to himself."  *Id.* at 6.

---

[1] Petitioner's 'A Number' is 094-863-513.

[2] This matter has been referred to the undersigned for review, report, and recommendation under
28 U.S.C. § 636, and the standing orders of the Court.

"In 2018, Petitioner obtained an advance parole document and traveled to Honduras to visit his mother who was ill on May 1, 2018, and re-entered the U.S. on May 31, 2018, with his parole document."  [doc. # 1, p. 5].

"On November 25, 2019, DHS issued Petitioner a Notice to Appear (NTA), alleging that his 2018 advance parole document was issued pending an I-485 Adjustment of Status Application that had been denied in June of 2019."  [doc. #s 1, p. 5; 1-3, p. 1].  The NTA states in part, "You remained in the United States beyond June 21, 2019, without authorization from [DHS]."  [doc. # 5, p. 1].  The NTA ordered Petitioner to "appear before an immigration judge" on May 12, 2020.  *Id.*

"On July 31, 2023, Petitioner applied for Asylum, Withholding of Removal and Protection under the Convention Against Torture ('CAT'), as a member of a particular social group fearing gang violence in Honduras."  [doc. # 1, p. 6].

Petitioner was taken into immigration custody in "early November 2025."  [doc. # 1, p. 1].  On February 2, 2026, an immigration judge ordered him removed from the United States to Honduras.  [doc. # 9-1].  Petitioner appealed the order to the Board of Immigration Appeals; his appeal is pending.  [doc. #s 9, p. 2; 9-2].

Petitioner filed this proceeding on February 3, 2026.  He first claims: "Petitioner's detention without the ability to be released on bond violates the plain language of the Immigration and Nationality Act (INA) and is contrary to decades of agency practice. The mandatory detention provisions of Section 1225(b)(2)(A) of the INA do not apply to individuals like Petitioner who previously entered and are now residing in the United States.  Instead, such individuals are subject to a different statute, 8 U.S.C. § 1226(a), that allows for release on conditional parole or bond."  [doc. # 1, pp. 2, 7, 11].

2

Next, Petitioner claims: "Petitioner's detention without a bond hearing violates his Fifth Amendment Due Process rights.  Petitioner has a significant liberty interest in remaining out of custody; without a bond hearing he faces a significant risk of erroneous deprivation of his liberty; and the detention without bond of non-citizens like Petitioner, who is not a danger or flight risk, does not serve a legitimate government purpose."  [doc. # 1, pp. 2, 9, 12].

Respondents opposed the petition on March 30, 2026.  [doc. # 9].  They argue primarily: "Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2).  This conclusion is required under controlling precedent. The Fifth Circuit Court of Appeals recently held that aliens, like the Petitioner, who entered the United States illegally and who are not 'clearly and beyond a doubt entitled to be admitted,' 'shall be detained' under 8 U.S.C. § 1225(b)(2)(A), until the conclusion of their removal proceedings.  *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026)."  *Id.*

Petitioner filed a reply on April 3, 2026, primarily re-urging his due process claim.  [doc. # 10].

**Law and Analysis**

**I. 8 U.S.C. § 1225 Vs. 8 U.S.C. § 1226**

As above, Petitioner claims: "Petitioner's detention without the ability to be released on bond violates the plain language of the Immigration and Nationality Act (INA) and is contrary to decades of agency practice.  The mandatory detention provisions of Section 1225(b)(2)(A) of the INA do not apply to individuals like Petitioner who previously entered and are now residing in the United States.  Instead, such individuals are subject to a different statute, 8 U.S.C. § 1226(a), that allows for release on conditional parole or bond."  [doc. # 1, pp. 2, 7, 11].

3

On February 6, 2026, the Fifth Circuit Court of Appeals held that aliens who have not been admitted may be detained without bond hearings pursuant to 8 U.S.C. § 1225(b)(2)(A) even when they have been present in the United States for many years. *Buenrostro-Mendez*, 166 F. 4th at 502. In reaching its conclusion, the court analyzed the meaning of "seeking admission" and "applicants for admission" in 8 U.S.C. § 1225. *Id.* The court concluded that "applicants for admission," which includes all aliens who have not previously been admitted to the United States, are necessarily "seeking admission" and, therefore, subject to mandatory detention under § 1225(b)(2)(A). *Id.*

Here, *Buenrostro-Mendez* forecloses Petitioner's argument. The Court should therefore deny this claim.

## II. Procedural Due Process

Petitioner claims: "Petitioner's detention without a bond hearing violates his Fifth Amendment Due Process rights. Petitioner has a significant liberty interest in remaining out of custody; without a bond hearing he faces a significant risk of erroneous deprivation of his liberty; and the detention without bond of non-citizens like Petitioner, who is not a danger or flight risk, does not serve a legitimate government purpose." [doc. # 1, pp. 2, 9, 12].

Preliminarily, the undersigned highlights that the two issues—procedural due process and the statutory interpretation of Sections 1225 and 1226 as addressed above—overlap but are distinct. Even though Petitioner is detained under Section 1225 and subject to mandatory detention by statute, his statutory and regulatory statuses do not foreclose his procedural due process claim.[3]

---

[3] *See Marceau v. Noem*, 2026 WL 368953, at *1 (W.D. Tex. Feb. 9, 2026) ("Marceau's constitutional interest in her liberty exists above and apart from the Immigration and Nationality Act and attendant regulations.") (citing *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025)).

Next, courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the [government]; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal citations omitted).

**A. Liberty Interest**

"No person shall . . . be deprived of . . . liberty . . . without due process of law[.]"  U.S. CONST. AMEND. V.   "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id*. at 690.

In *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972), the Supreme Court held that the requirements of procedural due process applied to parole revocations.  The Court first noted that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Id.* at 482.  Buttressing the parolee's interest in liberty is the society's interest "in not having parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole" and its interest "in treating the parolee with basic fairness." *Id.* at 484.

The Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments

5

of normal life." *Id.* at 482.  "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.*  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.*  Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.*

Here, Petitioner's release on parole was similar to the parole described in *Morrissey*. [doc. # 15-1, p. 3].  His release, for example, allowed him—with the Government's explicit permission—the freedom to live, associate, and establish ties in the United States.  Thus, Petitioner had a protected liberty interest in his release when he was on parole.[4]  However, Petitioner lost this liberty interest when his parole expired on June 21, 2019.  As above, the Government granted him parole only until his Form I-485 was adjudicated.  [doc. # 1-3, p. 1]. And on June 21, 2019, his "Form I-485 was denied[.]" *Id.*  At that moment, he was no longer on parole.  And the Government arrested him in November 2025, when he no longer possessed the liberty interest established by his parole.[5]

To be sure, Petitioner arguably established some liberty interest by living in the United States "since February of 2004[,]" and exercising his freedom (albeit unlawfully when he was

---

[4] *See, e.g., O.F.C. v. Almodovar*, 2026 WL 74262, at *7 (S.D.N.Y. Jan. 9, 2026) ("Both immigration parolees and those released on immigration bond are free to live their lives in this country and to form the . . . enduring attachments of normal life. . . . While released on bond, Petitioner was able to resume his life with his U.S.-citizen wife and his young U.S.-citizen children (one of whom was born while Petitioner was released). . . . The Court has little difficulty concluding that if the Government wishes to strip Petitioner of that liberty and these attachments, it must do so in a manner consistent with due process.") (internal quotation marks, quoted source, and record citation omitted).

[5] Petitioner does not claim that he lacked procedural due process with respect to the termination of his parole before ICE arrested him.

not paroled into the United States). *See Mathews v. Diaz*, 426 U.S. 67, 77 (1976) (noting that "[t]he Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these [aliens] from deprivation of life, liberty, or property without due process of law" whether they are here unlawfully or not). The undersigned, however, need not determine whether this arguable liberty interest entitled him to procedural due process because, as explained below, the undersigned finds that Petitioner received all the process he was due.

### B. Procedures Attendant Upon Petitioner's Deprivation

The "procedures attendant upon" Petitioner's deprivation were constitutionally sufficient. *See Kentucky Dep't of Corr.*, 490 U.S. at 460.

Procedural due process dictates that, before Respondents arrest Petitioner, he is afforded notice and the opportunity to at least respond to Respondents' contentions concerning detention. "[D]ue process does not hinge on whether one has a winning argument, a colorable argument, or any argument at all." *Aurecchione v. Falco*, 2023 WL 6255529, at *12 (S.D.N.Y. Sept. 25, 2023) (citing *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) ("The fundamental requisite of due process of law is the opportunity to be heard. The hearing must be 'at a meaningful time and in a meaningful manner.'")).

"The right to prior notice and a hearing is central to the Constitution's command of due process," as it "ensure[s] abstract fair play to the individual" and "minimizes substantively unfair or mistaken deprivations." *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993). "The constitutional minimum of due process guarantees that notice and an opportunity to be heard be granted at a meaningful time and in a meaningful manner." *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 239 (5th Cir. 2012) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (internal quotation marks omitted)). "The opportunity to present reasons, either in person or in writing,

7

why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Id.* (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . .").

Here, Petitioner does not argue that he was denied notice or an opportunity to be heard, which are both key components of due process. *Loudermill*, 470 U.S. at 546 ("The essential requirements of due process . . . are notice and an opportunity to respond."). Even if he did, the Government sufficiently afforded Petitioner notice and an opportunity to respond.

Petitioner "remained in the United States beyond June 21, 2019, without authorization from [DHS]." DHS then gave Petitioner adequate notice on November 25, 2019, in the NTA. [doc. # 1-3]. It recounted its allegations that Petitioner remained in the United States after his parole expired, it set forth the charges against him, and it instructed him to appear before an immigration judge on May 12, 2020. *Id.* Further, the hearing before the immigration judge afforded Petitioner an opportunity to be heard. Petitioner, therefore, received all the process he was due before his detention.

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that Petitioner Carlos H. Villalobos's petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation

to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 21st day of April, 2026.


_____
Kayla Dye McClusky
United States Magistrate Judge

9